## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| 601 CHRISTIANA INVESTORS, LLC, ) | |
| by way of assignment from Wilmington ) | |
| Savings Fund Society, FSB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. N15J-03882 |
| ) | |
| CHARLES H. GIFFORD, III, ) | |
| ) | |
| Defendant. ) | |

Submitted: August 9, 2017
Decided: November 29, 2017

Upon Defendant's Motion for Relief from the Confessed Judgment

**DENIED.**

## **ORDER**

William D. Sullivan, Esquire, William A. Hazeltine, Esquire, Elihu E. Allinson, III, Esquire, Sullivan · Hazeltine · Allinson LLC, 901 North Market Street, Suite 1300, Wilmington, DE 19801; Malcolm Gould, Esquire, Silverang, Donohue, Rosenzweig & Haltzman, LLC, 585 East Lancaster Avenue, Suite 203, St. David's, PA 19087, attorneys for 601 Christiana Investors, LLC.

David A. Felice, Esquire, Bailey & Glasser, LLP, Red Clay Center at Little Falls, 2961 Centerville Road, Suite 302, Wilmington, DE 19808, attorney for Charles H. Gifford, III.

**WHARTON, J.**

This 29th day of November, 2017, upon consideration of Defendant Charles H. Gifford's ("Gifford") Motion for Relief from the Confessed Judgment ("Motion"), Plaintiff 601 Christiana Investors, LLC's ("601 Christiana") Answer in Opposition, Gifford's Reply, oral argument, the unsolicited post-argument submissions of the parties, and the record in this case, it appears to the Court that:

1.     On September 2, 2015, 601 Christiana filed a Rule 58.1 confessed judgment and the Prothonotary entered a "Tentative Confessed Judgment" against Gifford as one of five co-guarantors of a loan obtained by Peninsula Compost Company, LLC from Wilmington Savings Fund Society FSB and assigned to 601 Christiana in the principal amount of $4,858,238.99.[1]  On October 5, 2015, Gifford objected to the entry of judgment by confession and requested that a hearing be scheduled.[2]  After motion practice, limited discovery and pre-hearing briefing, a hearing was conducted on February 22, 2016 before a commissioner of this court.[3] At that hearing, the commissioner resolved the two issues contested by the parties in favor of 601 Christiana, ruling that 601 Christiana did have standing to bring this action, and that Gifford knowingly, voluntarily and intelligently waived his

---

[1] D.I. 1.
[2] D.I. 5.
[3] D.I. 45.

rights in connection with the confession of judgment.[4] The commissioner entered a form of order submitted by 601 Christiana on February 25, 2016.

2. On March 8, 2016, Gifford submitted a Motion for Reconsideration of Commissioner's Order Pursuant to Superior Court Civil Rule 132(a)(3)(ii).[5] The single argument presented in the Motion was that the commissioner exceeded his authority by entering a case-dispositive order instead of submitting proposed findings of fact and recommendations for disposition to a judge. On July 12, 2016, this Court entered an Order denying the motion.[6]

3. Gifford appealed to the Delaware Supreme Court. That Court affirmed this Court's Order on March 27, 2017.[7] On appeal, Gifford raised two arguments for the first time which the Supreme Court determined were waived on appeal because they had not been fairly presented to this Court: 1) that he was unaware of and did not consent to certain final loan modifications thereby releasing him from his guaranty and voiding the confession of judgment; and 2) that 601 Christiana lacked standing to confess judgment because of an invalid assignment under Delaware suretyship law.[8]

---

[4] D.I. 47.
[5] D.I. 48.
[6] D.I. 58.
[7] *Gifford v. 601 Christiana Investors, LLC*, 2017 WL 1134769 (Del. 2017).
[8] *Id.* at *4.

4.     Gifford brings this motion under Superior Court Civil Rule 60(b).[9] In the Motion, he notes that, as a general proposition, the party seeking relief under Rule 60 must establish that; 1) it acted in a reasonably prudent fashion; 2) there is the possibility of a meritorious defense; and 3) there is a lack of substantial prejudice to the non-moving party.[10] The thrust of Gifford's argument is that he has a meritorious defense which ought to be litigated on the merits. The basis of that defense is his claim that, as guarantor of the confessed debt, he should be released from his obligations under a guaranty he executed because there were material alterations to the guaranty about which he did not know and to which he did not consent. Secondarily, he argues that he acted reasonably because the limited nature of the Rule 58.1 inquiry excuses his neglect for not pursuing the material modification in the earlier litigation. Relatedly, he claims that 601 Christiana withheld the relevant documents evidencing the material modifications until just prior to the Rule 58.1 hearing, thereby constituting misconduct on its part sufficient to warrant vacating the confessed judgment. Finally, Gifford argues that 601 Christiana would suffer no prejudice should the judgment be vacated because, if 601 Christiana prevailed at trial, it would be made whole by the imposition of pre-judgment interest.

---

[9] D.I. 66.
[10] *Id.* at 6-7; citing *PNC Bank v. Sills*, 2006 WL 3587247 (Del. Super.) at *5.

4

5.     601 Christiana responds contesting Gifford's arguments.[11] Specifically, 601 Christiana argues that Gifford has no possibly meritorious defense because he contractually agreed that any extension, modification, renewal or change to the loan documents would not affect his liability as a guarantor. Further the effects of the documents Gifford claims materially altered his guaranty obligation were not detrimental to him. Finally, 601 Christiana states that Gifford failed to raise his excusable neglect and misrepresentation arguments in a timely manner, and when he did raise them, he misstated the facts.

6.     The Court turns first to Gifford's claim that there is the possibility of a meritorious defense. It seems obvious that, if there is no possibility of Gifford presenting a meritorious defense on the merits, there is no point in vacating the judgement. Gifford was one of five guarantors of a business loan extended by WSFS to Peninsula Compost Company, LLC ("Peninsula") on April 9, 2009 in the original principal amount of $5.5 million to fund a large-scale composting business in Wilmington. Other guarantors were Nelson Widell, Peninsula Compost Group, LLC, and two businesses operated by Brian DiSabatino and E. Andrew DiSabatino, Jr. Those businesses were EDiS Development Group V, LLC and Crystal Holdings, Inc. Other documents were executed by the parties, including a Business Loan Agreement and a Guaranty Agreement. Under the terms of the Guaranty Agreement,

---

[11] D.I. 70.

the guarantors agreed that they were jointly and severally liable for the amount due under the loan.

7. Gifford identifies the Fourth Note and Loan Modification Agreement, effective December 31, 2013 and the Fifth Note and Loan Agreement, effective November 30, 2014 as critical to his purported meritorious defense. Gifford claims he was unaware of either modification.[12] He says that the Fourth Modification purported to waive certain financial covenants thereby increasing the risk of the loan.[13] As to the Fifth Modification, Gifford claims that in addition to waiving certain financial covenants, the modification accelerated the maturity date of the note by more than a year, from August 1, 2016 to June 30, 2015.[14] On October 20, 2014, between the dates of the Fourth and Fifth Modifications, the Delaware Department of Natural Resources and Environmental Control ("DNREC") ordered Peninsula to cease accepting any material at its facility immediately and to begin closing the business consistent with state mandated procedures.[15]

8. In response 601 Christiana argues that Gifford agreed under the Guaranty that the underlying loan documents could be modified without his consent and without affecting his responsibility as a guarantor.[16] Further, both modifications

---

[12] D.I. 66 at 3-5.
[13] *Id.* at 3.
[14] *Id.* at 4.
[15] *Id.*
[16] D.I. 70 at 11-12.

6

actually waived particular defaults under the Loan Documents – defaults that would have required Gifford to pay the full amount of his guaranty obligation immediately.[17] Specifically, 601 Christiana contends that the modifications did not change the amount of Gifford's debt, or effect any other substantial change.[18] Instead, the modifications acted to Gifford's benefit because the borrower – Peninsula – was already in default, and the modifications waived that default.[19] Finally, the acceleration of the maturity date did nothing to change the amount of the debt or Gifford's exposure because the loan was already in default.[20]

9. The Court has carefully reviewed the Guaranty and the Fourth and Fifth Modifications and agrees with 601 Christiana. Section 2(a) of the Guaranty contains the following language:

> Guarantor agrees that any extension, modification, renewal, or change in the Note (including, without limitation, an increase or decrease in the interest rate), or in any other of the Loan Documents by Lender or any other subsequent holder of the Note by agreement with the Borrower, or in the Loan Documents by the holder or beneficiary thereof by agreement with the other party or parties thereto, shall not in any manner affect or impair this Guaranty.[21]

Gifford's response is unpersuasive. He argues that the language of § 2(a) does not

---

[17] D.I. 70 at 3.
[18] *Id.* at 14-16.
[19] *Id.*
[20] *Id.* at 15.
[21] *Id.* at Ex. 3, § 2(a).

7

explicitly address accelerating the maturity date, nor would any prudent guarantor guaranty a loan where the lender could unilaterally accelerate the maturity date without the guarantor's consent.[22] What a prudent guarantor would or would not do is not the issue before the Court. Rather, the broad language of the Guaranty that the "Guarantor agrees that **any**...**modification**...or **change** in the Note (including, **without limitation**, an increase or decrease in the interest rate)" (emphasis added)[23] is before the Court. Certainly an acceleration of the maturity date is a modification or change in the Note. An explicit expression that the guarantor agreed that the guaranty included his consent to an acceleration of the maturity date is unnecessary to bring such consent within the terms of the Guaranty. For that reason, the Court finds that Gifford gave prior consent to the acceleration of the maturity date of the Note. Further, it is important to consider the circumstances that existed at the time the maturity date was accelerated by the Fifth Modification. Peninsula had been in default prior to both the Fourth and Fifth Modifications. Between the Fourth and Fifth Modifications, Peninsula was effectively put out of business, and put in default of the loan, when DNREC ordered it to cease accepting new material and to begin shutting down its operations. At that point, it appears that Peninsula was without any realistic

---

[22] D.I. 74 at 6-8.
[23] D.I. 70 at Ex. 3, § 2(a).

8

expectation of meeting its financial obligations. Gifford's guaranty could have been triggered then. Since the loan was already in default and Gifford was at risk at any time, a more realistic way to look at the change in the maturity date is that the Fifth Modification merely postponed the inevitable day of reckoning by an additional seven months. It did not increase Gifford's financial exposure. Accordingly, the Court finds that the change in the maturity date did not materially alter Gifford's risk. Similarly, Gifford gave his prior consent to the other modifications in the Fourth and Fifth Note and Loan Modification Agreements. None of those modifications materially altered Gifford's risk and, therefore, Gifford's objections to those modifications are without merit.

10.     Despite having determined that Gifford lacks a potentially meritorious defense, the Court will address Gifford's argument that he acted with reasonable diligence after learning of the loan modifications and their significance, and that his conduct was that of a reasonably prudent person under the circumstances, so that any neglect on his part was excusable.[24] Related to this argument is Gifford's contention that 601 Christiana withheld the Fourth and Fifth Modifications until just prior to the February 22, 2016 hearing before the commissioner.[25] The Court disagrees. *Contra* Gifford, it appears that Gifford received the Fourth Modification

---

[24] D.I. 66 at 12-13.
[25] *Id.* at 13-14.

9

on March 13, 2014[26] and his counsel received both the Fourth and Fifth Modifications on December 2, 2015.[27] As far as the Court can tell, Gifford never raised an issue concerning these modifications until the matter was on appeal to the Delaware Supreme Court. The Court thinks that a reasonably prudent person in Gifford's circumstances as a guarantor of a multimillion dollar loan, where he was jointly and severally liable as guarantor, and where the borrower was in default with no real prospect of escaping default, would be fully engaged in asserting whatever legitimate rights he might have. It appears that Gifford either was not that reasonably prudent person, or had no legitimate rights to protect. To the extent Gifford was neglectful, the Court finds that his neglect is not excused.

11. Lastly, Gifford argues that 601 Christiana would suffer no harm should his motion be granted and a trial on the merits held. Obviously, this factor is of vanishing importance given that Gifford has no possibly meritorious defense and his failure to pursue what he claims to be a meritorious defense sooner was not the result of excusable neglect.

---

[26] D.I. 70 at Ex. 11.
[27] *Id.* at Ex. 13.

10

Therefore, Defendant Charles H. Gifford, III's Motion for Motion for Relief from Confessed Judgment is **DENIED.**

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.